EDWIN A. LOMBARD, Judge.
 

 11
 
 Melissa K. Lyncker, Lisa Anne Lyncker, William Henry Lyncker, III and Jacob Ryan Lyncker, plaintiffs in a wrongful death action concerning the death of Mr. William Lyncker, appeal to this Court a judgment of the district court granting summary judgment to the State of Louisiana — Department of Transportation & Development (DOTD) and dismissing Plaintiffs’ claims against it in their entirety. For the reasons provided below, we affirm the district court’s granting of summary judgment.
 

 Factual and Procedural History
 

 Plaintiffs / Appellants are the wife and children of Mr. William Lyncker, who was killed on the evening of September 15, 2004, when his automobile collided into a metal floodgate operated by the Orleans Parish Levee District on Chef Menteur Highway, U.S. Highway 90 in Eastern New Orleans. Highway 90 is a major 4-lane highway in New Orleans east with two lanes for eastbound travel and two lanes for westbound travel.
 

 The floodgate had been extended across Highway 90 by the Orleans Levee District in preparation for possible high water due to the imminent arrival of Hurricane Ivan. The Levee District placed steel barricades across all lanes of | ^traffic to warn motorists that the floodgates were closed and to block passage on the roadway. Numerous radio and television broadcasts also warned motorist of the pending closure and installation of floodgates. Heavy steel barricades were placed at the intersection
 
 *139
 
 of Highway 11 and Highway 90 with the purpose of blocking passage onto Highway 90, where the floodgate was raised. Barricades with mounted flashing amber lights and reflective tape and sand bags closest to Highway 90 were placed 229 feet in advance of the floodgate. The Levee District also placed large reflective red diamond lights across the entire span of the Highway 90 floodgate itself to provide additional warning that the floodgates were raised. By the early evening, weather conditions in the city and the immediate Eastern New Orleans area had deteriorated due to high winds and moderate to heavy rainstorms, causing significant electrical power losses and wet, rain-slicked roads. The Mayor of New Orleans had issued emergency evacuation orders and placed a 2:00 p.m. curfew for residents choosing not to evacuate.
 

 During the daylight hours of September 15, 2004, Mr. Lyncker consumed significant quantities of beer as he made hurricane preparations to his home, boats, and business equipment. Unfortunately, despite the curfew and his consumption of alcohol, at approximately 8:00 p.m., Mr. Lyncker decided to drive to a family member’s restaurant, located east of the Highway 90 floodgate, to help with additional hurricane preparations there. Soon after leaving his home, Mr. Lyncker approached the Highway 11 floodgate, where the floodgate was closed and the roadway was barricaded. Mr. Lyncker then drove off the road and over an earthen levee north of this initial floodgate.
 

 Mr. Lyncker then proceeded toward the intersection with Highway 90, approximately three miles away, when he encountered additional warning signs Rand the barricades described above as the floodgate drew closer. Though there were reflective steel barricades lined across the intersection of Highway 11 and Highway 90, the strong winds had blown them apart enough such that Mr. Lyncker’s vehicle was able to pass through onto Highway 90. Mr. Lyncker turned onto Highway 90 and accelerated to speeds approaching seventy-five miles per hour. Mr. Lyncker did not slow his speed when he approached the amber-lit steel barricades that preceded the Highway 90 floodgate. Mr. Lyncker struck the barricades without applying his breaks or reducing his speed. One of the heavy barricades became trapped under Mr. Lyncker’s truck, yet Mr. Lyncker continued speeding towards the Highway 90 floodgate with the barricade dragging underneath the chassis of his truck.
 

 Within minutes, Mr. Lyncker’s truck was discovered crashed into the Highway 90 floodgate, causing the extremely heavy floodgate to collapse. The truck was straddling the reflective centerline between the eastbound and westbound lanes. The amber lights on the barricade pinned underneath Mr. Lyncker’s truck were still flashing when police and emergency responders came to the scene. Mr. Lyncker was killed in the impact. Undisputed toxicology reports revealed that Mr. Lyncker had a blood alcohol concentration of 0.21% at the time his vehicle crashed into the Highway 90 floodgate.
 

 Mr. Lyncker’s family filed a wrongful death action against Design Engineering, Inc., Circle, Inc., the Orleans Parish Levee District, and the State of Louisiana — Department of Transportation and Development. This Court affirmed the district court’s granting of summary judgment to Circle, Inc., who had constructed the floodgate that Mr. Lyncker’s vehicle crashed into.
 
 Lyncker v. Design Engineering, Inc., et al.,
 
 2007-1522 (La.App. 4 Cir. 6/25/08), 988 So.2d 812,
 
 writ denied,
 
 2008-1669 (La.10/24/08), 992 So.2d 1036.
 

 The Lynckers’ claims against DOTD include negligence in the construction and
 
 *140
 
 maintenance of the floodgate and failure to warn. Upon the completion of ample discovery, DOTD filed a motion for summary judgment, arguing that it has immunity under La.Rev.Stat. § 9:2798.4, when a driver sustains damages or death while driving under the influence of alcoholic beverages or drugs and over 25% negligent. The plaintiffs opposed summary judgment, arguing that DOTD’s alleged negligence in failing to construct advanced warning systems creates a material issue of fact as to liability, thus precluding summary judgment. The district court granted summary judgment in favor of DOTD, stating that “any reasonable fact finder would be compelled to find plaintiff excess of twenty-five percent negligent,” thus granting DOTD statutory immunity from liability against intoxicated drivers under § 9:2798.4. It is this granting of summary judgment that plaintiffs now appeal to this Court.
 

 Standard of Review and Summary Judgment Standard
 

 Appellate courts review motions for summary judgment
 
 de novo
 
 under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
 
 Wood v. Del Giorno, WWL-AM, et al.,
 
 2006-1612, p. 3 (La.App. 4 Cir. 12/19/07), 974 So.2d 95, 98. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La.Code Civ. Proc. art. 966(B). The burden of proof remains with the movant.
 

 15However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. La.Code Civ. Proc. art. 966(C)(2). Because the movant has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion.
 
 Istre v. Meche,
 
 2005-2508, p. 6 (La.6/16/06), 931 So.2d 361, 364.
 

 Law and Analysis
 

 The sole issue on appeal is whether the district court erred in granting summary judgment in favor of DOTD under La.Rev. Stat. § 9:2798.4, which provides immunity to the state, state agencies, and political subdivisions of the state for damages or injuries suffered by persons operating a motor vehicle under the influence of alcoholic beverages or drugs. La.Rev.Stat. § 9:2798.4 provides in pertinent part as follows:
 

 § 2798.4. Immunity from liability; injuries sustained by persons driving under the influence of alcoholic beverages or drugs
 

 A. Neither the state, a state agency, or a political subdivision of the state nor any person shall be liable for damages, including those available under Civil Code Article 2315.1 or 2315.2, for injury, death, or loss of the operator of a motor vehicle, aircraft, watercraft, or vessel who:
 

 (1) Was operating a motor vehicle, aircraft, watercraft, or vessel while his blood alcohol concentration of 0.08 percent or more
 
 by weight based on grams
 
 *141
 
 of alcohol per one hundred cubic centimeters of blood; or
 

 |6(2) Was operating a motor vehicle, aircraft, watercraft, or vessel while he was under the influence of any controlled dangerous substance described in
 
 R.S.
 
 U:98(A)(l)(c) or
 
 R.S. ⅛0:96⅛.
 

 B. The provisions of this Section shall not apply unless:
 

 (1) The operator is found to be in excess of twenty-five percent negligent as a result of a blood alcohol concentration in excess of the limits provided in R.S. U:98(A)(l)(b),
 
 or the operator is found to be in excess of twenty-five percent negligent as a result of being under the influence of a controlled dangerous substance described in
 
 R.S.
 
 1⅛:98{A)(l)(c); and
 

 (2) This negligence was a contributing factor causing the damage.
 

 (emphasis added).
 

 Plaintiffs first argue that the trial court erred in granting summary judgment to DOTD because they say that no comparative fault percentage determination was made, or that such a determination cannot be made on summary judgment. They state that the requirements for immunity from liability under § 9:2798.4 were misapplied, and that such a determination of immunity cannot be made on summary judgment.
 

 In order for DOTD to be held liable for damages, injuries, or death on a roadway, the plaintiff has the burden of proving: 1) that the thing that caused the damage was in the DOTD’s care, custody, and control; 2) that the thing had a vice, ruin, or defect that presented an unreasonable risk of harm; and 3) that the vice, ruin, or defect was the cause-in-fact of the plaintiffs damages.
 
 Ferrouillet v. State ex rel. Dept. of Transp. and Development,
 
 2002-0576, p. 2 (La.App. 4 Cir. 1/15/03), 836 So.2d 686, 687. The DOTD has a duty to maintain the public highways in a condition that is reasonably safe for persons exercising care and treasonable prudence, but also for those who are slightly exceeding the speed limit or who are momentarily inattentive.
 
 Id.,
 
 p. 3, 836 So.2d at 688.
 

 However, this duty does not extend to protect motorists against harm which would not have occurred but for their grossly negligent operation of a motor vehicle.
 
 Bullard v. State ex rel. Depart. of Transp. and Development,
 
 1998-1942, p. 12 (La.App. 1 Cir. 11/5/99), 744 So.2d 212, 220-221. The DOTD may also provide adequate warnings of a defect or hazard in their roadways. Warnings should be “sufficient to alert the ordinary, reasonable motorist, based on considerations of probable volume of traffic, the character of the road, and the use reasonably to be anticipated.”
 
 Id.,
 
 p. 11, 744 So.2d at 220.
 

 In the matter
 
 sub judice,
 
 this Court reaches the only reasonable conclusion, which is that Mr. Lyncker’s grossly negligent operation of a motor vehicle while severely intoxicated, as evidenced by his unrefuted .21% blood alcohol concentration and well-documented erratic and reckless driving actions, is the sole and proximate cause-in-fact of his fatal car accident at the Highway 90 floodgate on September 15, 2004. Therefore, we affirm the decision of the district court in granting summary judgment to the DOTD.
 

 In the plaintiffs’ first appeal to this Court in this matter, we noted that “since Mr. Lyncker crashed through the lighted barriers while heavily intoxicated and without slowing down, in this case, no warnings may have been enough to prevent the accident.”
 
 Lyncker v. Design Engineering, Inc., supra,
 
 p. 5, 988 So.2d at 816. Upon
 
 de novo
 
 review of the district court’s decisions of law and the entire rec
 
 *142
 
 ord, we find no reason to waver from this belief. The appellants’ claims that the DOTD failed to follow internal memos and engineering protocol in creating an “advanced warning system” are without merit. The documentation provided in the DOTD’s | ¿motion for summary judgment, all acceptable for consideration for summary judgment under La.Code Civ. Proc. art. 966(B), overwhelmingly shows that there is no genuine issue of material fact as to the cause-in-fact of Mr. Lyneker’s injuries and death, and that DOTD is clearly entitled to judgment as a matter of law.
 

 Sworn deposition testimony from Charles Wolfe, attached to the DOTD’s motion for summary judgment, shows that Mr. Lyncker had consumed significant quantities of beer throughout the course of the day, up to a few hours before he got into his truck at around 8:00 p.m. An attached affidavit from Mr. Wayne Winkler, an expert in accident reconstruction, reveals that the weather conditions required a reasonable driver to operate at speeds lower than the posted limit, but that Mr. Lyncker was driving over seventy-five miles per hour. Mr. Lyncker also should have seen the amber flashing lights on the initial steel barricades from more than 465 feet away. The large reflective diamond lights on the floodgate itself would have been visible from 300 feet. Instead, Mr. Lyncker drove straight through the barricades, dragging one barricade under his truck without slowing down. Mr. Winkler, who during his tenure with the Louisiana State Police was certified in Detection and Apprehension of Impaired Drivers and has personally arrested more than 500 drunk drivers, also noted if Mr. Lyncker was not under the influence of alcohol and traveling at the posted speed limit, he would have seen the amber lights and brought his vehicle to a safe stop. His failure to do so is directly attributed to his .21% blood alcohol concentration: drivers with such intoxication, according to Mr. Winkler, exhibit “decreased muscular coordination, staggering ... increased reaction times and disorientation.” Gary H. Wimbish, Ph.D., an expert on the effects on alcohol, provided an additional affidavit 1confirming that the amount of alcohol consumed by Mr. Lyncker would have still been in his system when the accident occurred.
 

 Given the facts and evidence provided above in the DOTD’s motion for summary judgment, plaintiffs’ argument that the Court has not “found” Mr. Lyncker to be in excess of twenty-five percent negligent as a result of his .21% blood alcohol concentration under La.Rev.Stat. § 9:2798.4 is without merit. His intoxication is undisputed. His negligence is certainly a “contributing factor” to his injuries and death. La.Rev.Stat. § 9:2798.4(B)(2). The legislative history of § 9:2798.4 does not require that a full trial on the merits take place when summary judgment is sufficient to determine that the DOTD is not liable in any way for Mr. Lyncker’s accident and death. The DOTD owes no duty to a driver operating a motor vehicle in a grossly negligent manner.
 
 Bullard v. State ex rel. Depart. of Transp. and Development,
 
 1998-1942, p. 12 (La.App. 1 Cir. 11/5/99), 744 So.2d 212, 220-221.
 

 Conclusion
 

 We agree with the district court’s conclusion that “any reasonable fact finder would be compelled to find Plaintiff in excess of 25 percent negligent.” Summary judgment is designed to secure the just, speedy, and inexpensive determination of
 
 every
 
 action, except those disallowed by Article 969. La.Code Civ. Proc. art. 966(A)(2). By granting summary judgment under La.Rev.Stat. § 9:2798.4, the
 
 *143
 
 district court “found”
 
 [1]
 
 that there is no genuine issue of material fact that Mr. Lyncker is over 25% negligent, and we find that Mr. Lyncker’s intoxication is the sole and proximate cause of his fatal accident.
 

 |
 
 mDecree
 

 The judgment of the trial court granting summary judgment to the State of Louisiana — Department of Transportation and Development under La.Rev.Stat. § 9:2798.4, and dismissing all claims against it in this matter, is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . La.Rev.Stat. § 9:2798.4(B)(1).